UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **DENISE L. BRANHAM,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:20-cv-00164-SLC |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** *sued as Andrew M. Saul,* | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Denise L. Branham appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). Because at least one of Branham's three arguments raised on appeal is persuasive, the Commissioner's decision will be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Branham applied for DIB in July 2017 alleging disability as of July 7, 2017. (ECF 16 Administrative Record ("AR") 210). Branham's claim was denied initially and upon reconsideration. (AR 10). On November 29, 2018, administrative law judge ("ALJ") Stephanie Katich conducted an administrative hearing at which Branham, who was represented by counsel, and a vocational expert testified. (AR 38-70). On April 12, 2019, the ALJ rendered an unfavorable decision to Branham, concluding that she was not disabled because she could perform a significant number of unskilled, light-exertional jobs in the national economy despite

the limitations caused by her impairments. (AR 10-21). The Appeals Council denied Branham's request for review (AR 1), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Branham filed a complaint with this Court on April 15, 2020, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Branham alleges that a remand is necessary because the ALJ: (1) incorrectly analyzed the opinions of the physical consultative examining physicians; (2) erred by disregarding evidence when assigning her residual functional capacity ("RFC"); and (3) failed to offer a significant number of jobs at step five. (ECF 20 at 6).

At the time of the ALJ's decision, Branham was fifty-three years old (AR 210); had a high school education (AR 57, 248); and had work experience as a crew member and shift manager at fast food restaurants, a janitor, a packer in a warehouse, a "stower" at Amazon, and a cook at a nursing home (AR 248, 305, 325). Branham was working at a fast food restaurant between twenty and twenty-four hours a week at the time of her administrative hearing, but this work activity did not rise to the level of substantial gainful activity. (AR 12, 45-46, 326). In her application, Branham alleged disability due to post traumatic stress disorder, major depression, anxiety, chronic low back pain, arthritis in both hands and feet, high blood pressure, bipolar disorder, mood swings, and "anger issues." (AR 247).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

3

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether the claimant is incapable of performing any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On April 12, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 10-21). At step one, the ALJ concluded that while Branham had engaged in work activity after her alleged onset date of July 7, 2017, her earnings did not rise to the level of substantial gainful activity. (AR 12). At step two, the ALJ found that Branham had the following severe impairments: degenerative disc disease of the lumbar spine, lumbar sciatica, chronic pain syndrome, obesity, and hearing loss. (AR 13). At step three, the ALJ concluded that Branham did not have an impairment or combination of impairments severe enough to meet

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

4

or equal a listing. (AR 16).

Before proceeding to step four, the ALJ determined that Branham's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 17). The ALJ assigned Branham the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally climb ramps and stairs, she can never climb ladders, ropes, scaffolds, she can occasionally balance, stoop, kneel, crouch, and crawl, she should avoid concentrated exposure to extreme cold, wetness, and hazards such as unprotected heights or unguarded moving machinery. In addition, she can respond appropriately to occasional interactions with coworkers and supervisors, and she should avoid work activity requiring direct communications with the general public, either over the phone or in person.

(AR 17).

Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Branham was unable to perform her past relevant work. (AR 20). However, at step five, the ALJ concluded that Branham could perform a significant number of unskilled, light-exertional jobs, including router (53,000 jobs in the national economy), small parts assembler (38,000 jobs in the national economy), and package sorter (41,000 jobs in the national economy). (AR 20-21). Therefore, Branham's application for DIB was denied. (AR 21).

### C. The Opinions of Dr. Parker and Dr. Jacob

Branham argues that the ALJ improperly discounted the opinions of Dr. Stephen Parker and Dr. Kurt Jacobs, two consultative examining physicians. (ECF 20 at 12-16; *see* AR 476-78, 647-57). Ultimately, Branham's challenge to the ALJ's consideration of these two examining medical opinions is persuasive, warranting a remand of the Commissioner's final decision.[2]

---

[2] Branham argues for the first time in her reply brief that the ALJ also improperly weighed the opinion of Dr. Abdelmessiah Guirguis, her previous primary care physician. (ECF 25 at 1-4). However, "arguments raised for the first time in a reply brief are deemed waived." *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) (citations

Dr. Parker examined Branham at the request of the state agency on February 24, 2018. (AR 647-57). He noted that Branham arrived with a cane, which she stated had not been prescribed but had been using for the past several months. (AR 653, 657). On clinical examination, Branham was able to get on and off the table normally and straight leg raising tests were normal. (AR 654). She was deconditioned and exhibited lumbar stiffness with reduced lumbar range of motion and hip external rotation. (AR 654-56). She had normal muscle strength and reflexes but diminished sensation in her feet and ankles. (AR 654-55). She demonstrated a slow, wide-based gait with normal stability when using an assistive device, but "low normal" stability without. (AR 653). She was able to tandem walk with an assistive device but not without; she could squat with difficulty when using an assistive device. (*Id.*). Dr. Parker indicated her ability to ambulate effectively was "normal." (AR 654).

Dr. Parker further opined that Branham could maintain good balance while ambulating with the assistive device and carrying less than ten pounds, and that she could stand or walk at least two hours in an eight-hour workday. (AR 653-54). He indicated that the assistive device was not medically necessary. (AR 653). He opined that her complaints of low back pain and intermittent shooting pain down her left leg were "likely exacerbated by [her] body habitus, BMI 41." (AR 657). He recommended that she pursue weight loss and physical therapy for her low back pain. (AR 657).

In assessing medical opinion evidence—like Dr. Parker's opinion—an ALJ is to consider the factors set forth in 20 C.F.R. § 404.1520c(c) when determining the proper weight to apply to the opinion. These factors are: 1) supportability; (2) consistency; (3) relationship with the

---

omitted). Consequently, Branham's argument concerning Dr. Guirguis's opinion is waived and merits no further mention.

claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 404.1520c(c); *see, e.g.*, *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021). "Although the ALJ must consider all of these factors, [she] need only explain how [she] considered supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (citations omitted) ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." (alterations in original) (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))).

Here, the ALJ expressly considered Dr. Parker's March 2018 opinion. In particular, she considered Dr. Parker's observation that Branham had "a wide based gait, difficulty walking on heels, toes, and tandem walking, difficulty getting on and off the exam table, and reported stiffness," but concluded that the "remainder of the records do not support this level of impairment." (AR 18 (citing AR 646-58)). She explained that March 2018 imaging showed just "mild degenerative changes," and that Branham "frequently had negative straight leg raising, no edema, no muscle spasm, intact strength, and she admitted that she could stand at her current job six hours a day." (*Id.* (citing AR 660, 663-88)). The ALJ further assessed that despite Branham's claim of a sixteen-year history of back pain after a fall from a roof, "her physical exams were generally unremarkable for deficits in physical functioning." (*Id.* (citing AR 663-65)). Additionally, the ALJ considered Branham's use of a cane, stating that it was not prescribed, that she does not constantly use it, that she "admitted that she does not need her cane

7

to work six hours while standing," and that Dr. Parker opined it was not medically necessary. (*Id.*; *see* AR 43-44, 53-54, 653). The ALJ then declined to include use of a cane in the RFC, stating that "its regular use is not consistent with or supported by the evidence." (AR 18). She also indicated that the RFC accommodates Branham's "severe morbid obesity with a BMI of at least 40.0." (AR 18-19).

> Ultimately, the ALJ applied "[s]ome weight" to Dr. Parker's examining opinion, stating:
>
> [Dr. Parker] opined that the claimant could maintain balance while ambulating with an assistive device, the assistive device was not medically necessary, that she could carry ten pounds, and that she could walk two hours. Some weight is given to this opinion as far as it is consistent with and supported by the record. For example, as discussed above, the claimant's use of an assistive device is not supported; however, her ability to lift at least ten pounds and walk for two hours is supported by her intact strength, normal reflexes, and admission that she already stands six hours a day at her current job. Therefore, this opinion is somewhat persuasive.

(AR 19 (internal citations omitted)).

Branham correctly contends that the ALJ inadequately evaluated Dr. Parker's opinion on several fronts. First, she asserts that the ALJ fails to offer any basis for why the mild degenerative changes revealed in the imaging could not cause the level of impairment expressed by Dr. Parker, particularly where Dr. Parker indicated Branham's obesity exacerbated her limitations. (ECF 20 at 12-13). Under the regulations, the ALJ is instructed to consider the extent to which a physician's opinion is supported by "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). Here, the ALJ cited the imaging results when discounting Dr. Parker's opinion, but "did not explain how these [mild degenerative] findings correlate to functional capabilities such [as] standing or sitting for prolonged periods of time . . . ." *Mondragon v. Colvin*, No. 13-cv-01354-PAB, 2015 WL

8

1514536, at *7 (D. Colo. Mar. 27, 2015). Given Branham's severe morbid obesity, there is no indication that the imaging results are inconsistent with Dr. Parker's limitations. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004 ) ("Even if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both."); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Compare two women with disk disease of identical severity, and both women are 5 feet 11 inches tall but one weighs 150 pounds and the other 275 pounds. The effect of the disk disease on ability to stand, sit, etc., for protracted periods is likely to be different in the two cases by virtue of the difference in weight.").

Next, the ALJ wrote that Branham's "physical exams were generally unremarkable for deficits in physical functioning," frequently revealing negative straight leg raising tests, no edema, no muscle spasms, and intact strength.[3] (AR 18). The ALJ's observation in this respect is also problematic. As Branham points out, this reasoning overlooks evidence indicating that Branham's back pain progressively worsened over time, particularly in later 2018. Branham emphasizes that her chronic bilateral back pain went from "lacking sciatica to *with* sciatica—all despite iterations of medication changes attempting to address it." (ECF 20 at 13; *see, e.g.*, AR 673).

Then in June 2018, Branham was referred to "pain management for possible interventions" for her back pain. (AR 673). In September 2018, she was seen by Dr. Charles

---

[3] Of course, "as several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations including limited abilities to stand or walk." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019); *see also id.* at *3 n.4 (collecting cases).

9

Lindzy, a pain management physician, who ordered an MRI for the "worsening of her low back pain with neuropathic pain down the back of her left leg . . . result[ing] in difficulty with ambulation." (AR 665). Branham's straight-leg test was positive bilaterally during Dr. Lindsey's examination. (*Id.*). The ALJ, however, did not mention this evidence from later 2018 that reflected a worsening in Branham's physical symptoms. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must sufficiently articulate his assessment of the evidence to assure that the important evidence was considered).

Also, Branham argues that the ALJ's observation that she "could" stand at her current job six hours a day fails to acknowledge evidence indicating that such prolonged standing was exacerbating her symptoms. (ECF 20 at 13; *see* AR 666 ("Patient has gone back to work for the last 2 months working at Burger King. She is on her feet on concrete about 6 [hours] daily and her back is hurting quite a bit. More on the left side and pain radiates down her leg. She states that narcotics [have] not done much to help her pain in the past and they make her very nauseous. She is requesting a referral to pain management.")). As such, the ALJ cherry-picked evidence that supported her conclusion that Branham could stand or walk up to six hours a day without an assistive device, ignoring evidence undercutting that conclusion. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (stating that an ALJ is not permitted to "cherry-pick" from mixed medical results to support a denial of benefits).

Yet, the RFC assigned by the ALJ is not without some support in the record. The reviewing state agency physicians found that Branham could perform light-exertional work in that she could stand or walk for six hours in an eight-hour workday, lift ten pounds frequently and twenty pounds occasionally, and occasionally stoop, kneel, crouch, and crawl. (AR 79, 94,

121-22). These doctors, however, did not have the opportunity to review the medical evidence subsequent to March 2018, which showed Branham's worsening back pain with sciatica, the referral to pain management, and the positive straight-leg-raising tests. (*See* AR 663-69); *see Stage v. Colvin*, 812 F.3d 1121, 1125-26 (7th Cir. 2016) ("Before basing a denial on such a finding, the ALJ should have considered contrary evidence and obtained a medical opinion based on a complete record." (citation omitted)); *Fike v. Astrue*, No. 1:11-CV-00168, 2012 WL 1200670, at *8 (N.D. Ind. Apr. 10, 2012) ("[T]o arrive at Fike's RFC, the ALJ assigned 'great weight' to the 2008 opinion of the state agency physicians. But these physicians *never reviewed* Dr. Chaykowski's or Dr. Mackel's treatment notes because their notes were not placed into the record until January 2010." (citations omitted)).

Furthermore, the ALJ's conclusion that Branham could perform light-exertional work is inconsistent with the opinion of Dr. Jacobs, who examined Branham two years earlier at the request of the state agency. At that time Branham was still able to walk at normal speed and on heels, toes, tandem walk, and squat without an assistive device. (AR 477-78). Yet even then Dr. Jacobs limited Branham to "[s]tanding/walking frequently, and sitting most of the time," stating that her back pain "will probably not improve with time." (AR 478). The term "frequently" in Social Security law typically means "occur[ing] one-third to two-thirds of an eight-hour workday," *Smith v. Colvin*, No. 15 CV 50208, 2017 WL 106041, at *2 n.1 (N.D. Ill. Jan. 11, 2017) (quoting Program Operations Manuel System, DI 25001.001 Medical-Vocational Quick Reference Guide)), equating to between 2.7 and 5.3 hours of the workday. Here, however, the ALJ concluded that Branham could stand or walk *at least* six hours in an eight-hour workday.

11

Significantly, Dr. Parker and Dr. Jacobs both examined Branham and rendered their opinions at the request of the state agency. "[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014); *see Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (stating that an examining state agency physician is "unlikely . . . to exaggerate an applicant's disability"); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). Here, the distinction between an RFC for sedentary work consistent with Dr. Parker's limitations, and an RFC for light work consistent with the state agency physicians' limitations, is crucial. This is because based on Branham's education and advanced age, if she were limited to sedentary work she would be automatically deemed disabled under the grid rules. *See* 20 C.F.R. Part 404, subpt. P, App'x 2, Rule 201.12, 201.14.

In sum, the ALJ's reasoning pertaining to Dr. Parker and Dr. Jacobs—the medical sources who examined Branham at the request of the Social Security Administration—overlooks recent evidence of Branham's worsening symptoms and also cherry-picks certain evidence. As a result, a remand is warranted for reconsideration of these medical source opinions and their impact on the RFC.[4] While Branham asks that the Court reverse the Commissioner's decision

---

[4] Because a remand is warranted for reconsideration of the examining medical source opinions, the Court need not reach Branham's remaining arguments. On a brief review, though, Brandam's argument asserting that the 132,000 representative jobs cited by the ALJ at step five is not a significant number appears at odds with Seventh Circuit case law on that topic. *See Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (holding that 140,000 jobs in the national economy were "numbers *well above* the threshold for significance" (emphasis added)).
   As to Branham's other remaining argument pertaining to the RFC, in part it challenges the ALJ's finding

and remand for an outright award of benefits (ECF 20 at 15), "[a]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability."  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005) (citations omitted); *see also Bray v. Astrue*, No. 2:10-CV-00352, 2011 WL 3608573, at *10 (N.D. Ind. Aug. 15, 2011).  The record here does not "yield but one supportable conclusion" in Branham's favor.  *Briscoe ex rel. Taylor*, 425 F.3d at 355.  Rather, the ALJ overlooked important medical evidence when considering the medical source opinions and assigning the RFC.  This issue can only be resolved through further proceedings on remand.  *See Bray*, 2011 WL 3608573, at *10.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.  The Clerk is DIRECTED to enter a judgment in favor of Branham and against the Commissioner.

SO ORDERED.  Entered this 23rd day of April 2021.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

that Branham's mental impairments were non-severe and asserts that such mental impairments were inadequately accounted for in the RFC.  (*See* ECF 20 at 18-19; ECF 25 at 8-10).  Upon brief review, that argument seems to have some traction, given Branham's diagnosis of "Major depressive disorder, recurrent, *severe* with psychotic symptoms" in August 2017.  (AR 573 (emphasis added)); *see O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) ("[H]ere the ALJ decided that 'major depression, recurrent *severe*' isn't a severe impairment based on the opinions of two state-agency psychologists who did not even examine, let alone treat, O'Connor-Spinner.  That determination is not supported by substantial evidence and, indeed strikes us as nonsensical given that the diagnoses, by definition, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning." (citation and internal quotation marks omitted)).  Upon remand, the ALJ is encouraged revisit her finding that Branham's mental impairments are nonsevere and her reasoning related thereto—in particular, her reliance on Branham's ability to drive a car, a lack of psychiatric hospitalization, and that she has "not *constantly* sought mental health treatment."  (AR 15 (emphasis added)).